UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BOARD OF TRUSTEES, NATIONAL )
STABILIZATION AGREEMENT OF THE )
SHEET METAL INDUSTRY )
TRUST FUND, *et al.*, )
                                         )
           Plaintiffs,            ) Case No. 1:14-cv-01281(CMH/IDD)
                                         )
v.                                           )
                                         )
MIDATLANTIC SITE )
SERVICES, LLC, *et al.*, )
                                         )
          Defendants.           )

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Board of Trustees for the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), and the Sheet Metal Workers' International Association Scholarship Fund's ("Scholarship Fund"), (collectively, "Plaintiffs" or "Funds"), Amended Motion for Default Judgment against Midatlantic Site Services, LLC, doing business as "Midatlantic Site Services," "Midatlantic Sign Services LLC," "Midatlantic Sign Services," and "Midatlantic Sign and Site Services, LLC[1] (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 13.) After a licensed attorney for the Defendants failed to appear at the hearing on February 20, 2015, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiffs' Amended Motion for Default Judgment and the supporting documentation

---

[1] Midatlantic Site Services and Midatlantic Site Services LLC will be referred to collectively as "Midatlantic Site." Midatlantic Sign Services and Midatlantic Sign Services LLC will be referred to collectively as "Midatlantic Sign."

1

thereto, the undersigned Magistrate Judge makes the following findings and recommends that the Amended Motion be GRANTED in part and DENIED in part.

## I. INTRODUCTION

On September 29, 2014, Plaintiffs filed this action under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145, and Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Compl. ¶ 1.) These Acts allow parties to enforce provisions of their collective bargaining agreements. In filing their Complaint, Plaintiffs seek unpaid contributions, interest, liquidated damages, late fees, attorney's fees and costs, and injunctive relief, pursuant to ERISA, the LMRA, the collective bargaining agreement ("Labor Contract") and declarations of trust ("Trust Agreements") executed between Local Union No. 19 of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("Local Union") and Defendant Midatlantic Site. (Compl. ¶¶ 13, 32(2), 36(2), 43(1)-(2), 46(1), 48(1).)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 185(a), 1132, and 1145 because the funds are administered from Plaintiffs' principal place of business in Fairfax, Virginia. (Compl. ¶¶ 1, 9; Am. Mot. Default J. ¶ 9; Mem. Supp. Default J. at 2.) Where an action is brought in a district court of the United States under Sections 502 and 515 of ERISA, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Furthermore, "[a suit] for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

This Court has personal jurisdiction over the Defendants under the decision in *Board of Trustees, Sheet Metal Workers National Pension Fund v. McD Metals, Inc.* 964 F. Supp. 1040, 1045 (E.D. Va. 1997).[2] Additionally, this Court has personal jurisdiction over the Defendants pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). (Compl. ¶¶ 9, 11.) Venue is properly situated in this District because the breach of the collective bargaining agreements and consequential breach of Section 515 of ERISA, 29 U.S.C. § 1145, occurred within this judicial district. (Compl. ¶ 3.)

### B. Service of Process

Under 29 U.S.C. § 1132(e)(2), service of process is proper in any district where a defendant resides or may be found. When a plaintiff fails to serve the defendant properly under federal or state law, a court lacks personal jurisdiction over the defendant and may not enter default judgment against him. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Fed. R. Civ. P. 4(k), (stating "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946)); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249, 251 (4th Cir. 1974) (reversing district court's decision to enter default judgment against a non-resident defendant union because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the union with summons and complaint).

Although § 1132(e) states where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a

---

[2] The Court held that the Eastern District of Virginia had personal jurisdiction over defendant, a New York corporation, because ERISA provided for nationwide service of process, and thus, the Fifth Amendment "national" contacts theory is applicable, and the Virginia long-arm statute under Virginia Code § 8.01-328.1 is inapplicable.

corporation, partnership, or other unincorporated association shall be effectuated "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h). Subdivision (e)(1) also states that service may be achieved by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Defendants are New Jersey domestic limited liability companies, with principal places of business in Waterford Works, New Jersey. (Compl. ¶¶ 11-12.) Thus, service in this case is proper if it is executed in accordance with New Jersey law.

New Jersey law provides that service of a corporation may be carried out by serving a copy of the summons and complaint "on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation." N.J. Ct. R. 4:4-4(a)(6). The statute also provides for process to be served on "a person at the registered office of the corporation in charge thereof." *Id.* Additionally, service upon a managing or general agent of a corporation is proper where the individual served is "sufficiently integrated" with the corporation, such that it would be reasonable for the process server to assume that the individual served has authority to receive service on behalf of the corporation.[3] *O'Connor v. Altus*, 335 A.2d 545, 557 (N.J. 1975).

On October 24, 2014, a private process server delivered a copy of the Summons and Complaint to Terry Metz, office manager at the Defendants' principal place of business. (Dkt.

---

[3] In *O'Connor*, the court found that a receptionist was "sufficiently integrated" with the defendant corporation such that it was reasonable for the sheriff serving process to assume that the receptionist had the authority to accept service. 335 A.2d at 557. The court also held that this method of service met the due process requirements articulated by the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Company*. *Id.* at 556-57 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

4

Nos. 4-5; Suppl. Mem. Supp. Mot. Default J. at 4.) The process server's affidavit states that Ms. Metz answered the door and stated that she was authorized to accept service on behalf of the Defendants. (Schaffer Decl. ¶ 6.) The process server also avers under oath that he believed that Ms. Metz was sufficiently integrated with Midatlantic Site and Midatlantic Sign, such that she was authorized to accept process on behalf of both Defendants. (*Id.* at ¶ 7.) Therefore, the undersigned finds that Plaintiffs properly served Defendants pursuant to Fed. R. Civ. P. 4(e)(1) and New Jersey law.

### C. Grounds for Default

Plaintiffs filed their Complaint on September 29, 2014. (Dkt. No. 1.) Defendants have failed to appear, answer, or file any other responsive pleading in this matter. On November 19, 2014, Plaintiffs filed a Request for Entry of Default with the Clerk of the Court. (Dkt. No. 6.) On November 20, 2014, the Clerk entered Default against Defendants. (Dkt. No. 7.) On February 13, 2015, Plaintiffs filed their Amended Motion for Default Judgment, and the Court held a hearing on the matter on February 20, 2015. (Dkt. Nos. 13, 16.) After Defendants failed to appear at the February 20, 2015 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. EVALUATION OF PLAINTIFFS' COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the

plaintiff where the plaintiff failed to state a valid claim). A defendant in default concedes the factual allegations of the complaint and is barred from contesting them on appeal. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate the Plaintiffs' claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. FACTUAL FINDINGS

The undersigned Magistrate Judge makes the following findings of fact based on the Complaint, the Amended Motion for Default Judgment and supporting documentation thereto, as

well as the affidavits and documents submitted in proof of damages.

Plaintiffs are the boards of trustees of multiemployer employee benefit plans[4] administered from offices located in Fairfax, Virginia. (Compl. ¶¶ 4-9; Shaw Decl. ¶ 1.) Defendants are New Jersey domestic limited liability companies with principal places of business in Waterford Works, New Jersey. (Compl. ¶¶ 11-12.) Plaintiffs allege, and by failing to answer Defendants admit[5] that, at all relevant times, Defendants were employers "in an industry affecting commerce" as defined by 29 U.S.C. § 152(2), (6) and (7), and Sections 3(5), 3(11), and 3(12) of ERISA, 29 U.S.C. § 1002(5), (11) and (12). (*Id.*) Defendant Midatlantic Site entered into a Labor Contract with the Local Union. (Compl. ¶ 14.) Midatlantic Site also agreed to abide by the terms of the Funds' Trust Agreements. (Compl. ¶¶ 15-16.) Plaintiffs further allege that, although not a signatory to the Labor Contract and Trust Agreements, Midatlantic Sign is the alter ego of, or part of a joint employer or single employer with Midatlantic Site and, as such, is jointly and severally bound to the terms of these agreements. (Mem. Supp. Default J. at 2.)

Pursuant to the Labor Contract and Trust Agreements, Midatlantic Site agreed to submit monthly remittance reports detailing all employees and work for which contributions were required; to make fringe benefit contribution payments to Plaintiffs on behalf of employees covered by the Labor Contract; and, to produce, upon request by the Plaintiffs, all books and records deemed necessary to conduct audits of Midatlantic Site concerning its obligations to the Plaintiffs. (Compl. ¶¶ 16-17; Mem. Supp. Default J. at 2.)

In violation of the Labor Contract, Trust Agreements, and Defendant's obligations under federal law, Midatlantic Site failed to make proper contributions under ERISA (Count I) and the

---

[4] Such plans are defined by ERISA, 29 U.S.C. § 1002(3), (37).

[5] Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.").

7

Labor Contract (Count II) on behalf of certain covered employees, and to submit to a required audit (Count III). (Compl. ¶¶ 29-43.) Specifically, Midatlantic Site failed to submit required remittance reports and timely pay such contributions due and owing on behalf of its employees for work covered during the period of October 2013 through July 2014. (Compl. ¶ 30; Shaw Decl. ¶ 8.) Midatlantic Site has also failed to pay liquidated damages, late fees, and interest for its failure to make timely payments to Plaintiffs for the same period. (Compl. ¶¶ 31, 35.)

Under the Labor Contract, Trust Agreements, the Funds' rules and regulations, and ERISA law, Midatlantic Site agreed to: (1) make full and timely payment on a monthly basis to the Plaintiffs; (2) file monthly remittance reports with the Plaintiffs detailing all employees or work for which contributions were required under the Labor Contract; (3) produce, upon request by the Plaintiffs, all books and records deemed necessary to conduct an audit of Midatlantic Site's records concerning its obligations to Plaintiffs and to pay the costs of the audit; and (4) pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorney's fees, expended by the Plaintiffs to collect any amounts due as a consequence of Midatlantic Site's failure to comply with its contractual and statutory obligations. (Compl. ¶ 16.) Therefore, Plaintiffs are entitled to recover (1) the full amount of unpaid contributions; (2) late fees on the untimely payments;[6] (3) interest on the unpaid contributions;[7] (4) liquidated

---

[6] SASMI has additional charges for delinquencies paid after their due date, but before litigation, which may not be covered by ERISA Section 502(g). For SASMI, late charges equal ten percent (10%) of the contribution amount for contributions paid after the due date, and before a lawsuit is filed. (Mem. Supp. Default J. at 15.)

[7] Interest is assessed at the rate of eight and one-half percent (8.5%) per annum from the date due through the date of payment. The parties have agreed to the rate in their contract rather than the statutory rate established under 28 U.S.C. § 1961. (Mem. Supp. Default J. at 12-14.) ERISA does not limit the ability of parties to a contract to increase obligations beyond the statutory floor. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15, 2008 WL 640252, at *3 (E.D. Va. Mar. 5, 2008). Such interest accrues until payment is made.

damages;[8] and (5) reasonable attorney's fees and costs incurred by Plaintiffs in pursuing the delinquent contributions, including the attorney's fees and costs of bringing this action.

## A. Liability

### 1. Midatlantic Sign

Plaintiffs ask this Court to declare Defendant Midatlantic Sign the alter ego or successor of Midatlantic Site; or, in the alternative, that the companies are single or joint employers, such that they may both be held liable for past and ongoing obligations under the Labor Contract and Trust Agreements. (Compl. ¶¶ 31(1), 36(1).)

The analysis employed in making a finding of alter ego status is similar to that used "to pierce the corporate veil of a subsidiary corporation and hold its owner(s) liable for the debts of [the] subsidiary." *Alkire v. N.L.R.B.*, 716 F.2d 1014, 1021 n.5 (4th Cir. 1983). In the context of labor relations, the Fourth Circuit has asked "whether substantially the same entity controls both the old and new employer. If this control exists, then the inquiry must turn to whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Id.* at 1020. "To the extent that obtaining the benefit was a motive for the transfer, or was a reasonably foreseeable effect, the result represents a disguised continuance of the old employer. *Id.* Whether a transfer of business operations is a "disguised continuance" such that *alter ego* doctrine applies is a factual determination. *See id.* at 1018 (citing *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942)).

Business records attached to the Complaint indicate that Midatlantic Site and Midatlantic Sign exist as separate corporate entities. (Compl., Exs. 2-3.) The primary support for Plaintiffs' allegations that they are one and the same comes from a series of printouts from a website that

---

[8] Pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), liquidated damages are calculated at an amount equal to the greater of interest accrued on the unpaid contributions or twenty percent (20%) of the unpaid contributions.

appears to be shared by the Defendants. (Compl., Ex. 4 at 1-8.) Plaintiffs allege that the list of four employees on the single, "About Us" webpage shows that the companies have "substantially identical officers and management"—including Jeffrey String, who is the managing member for both entities. (Compl. ¶ 24(a); Ex. 4 at 1.) Plaintiffs further contend that the companies are engaged in "the same or essentially the same business," have common employees, use the same equipment, operate from the same location; and, in reference to the shared website, are marketed as a joint operation. (Compl. ¶ 24(a)-(g)). Finally, Plaintiffs assert that "the artificial division between union and non-union projects between Midatlantic Sign and Midatlantic Site results in an expected or reasonably foreseeable benefit related to elimination of Defendants' labor obligations." (Compl. ¶ 24(i).)

While Plaintiffs have pled sufficient facts supporting their assertion that there is common control over both Defendants, the undersigned is not persuaded that they have demonstrated receipt of a benefit or a reasonably foreseeable benefit such that an alter ego finding may be made. Plaintiffs have demonstrated that Defendants have the same managing member, operate at the same address, have the same registered agent for service, and are engaged in the same or similar industries. The undersigned notes that it is not clear whether the website Plaintiffs rely on is up to date and accurately reflects the full roster of employees allegedly shared by the Defendants. Still, the Court accepts as true the Complaint's factual allegations and, in light of the more relaxed alter ego standard to be applied, resolves that a finding that Midatlantic Sign is under common control with Midatlantic Site is appropriate.

As to obtaining a benefit, however, the undersigned does not find that Plaintiffs' suspicion regarding the motive for Defendants' separate corporate structure properly substantiates this claim. As previously stated, Plaintiffs have only provided screen captures of

10

the Midatlantic Site website, and offer no additional information as to the nature of Defendants' businesses, any alleged diversion of projects, or the use of shared personnel (whether unionized or not) supporting the allegation that Defendants are evading their statutory obligations. While the Memorandum in Support of the Motion argues that Midatlantic Site's refusal to permit an audit of its records suggests it is attempting to hide employee hours, including those worked potentially under the direction of Midatlantic Sign, the undersigned is not persuaded by such speculation alone. (Mem. Supp. Default J. at 6-8.) This is particularly true where the Complaint fails to set forth sufficient facts, as opposed to a recital of the second element of the Fourth Circuit's alter ego test, regarding Midatlantic Site's motivation and reasonable expectation or actual receipt of a benefit derived from the separate operation of Midatlantic Sign. It is equally as probable that Midatlantic Site refused to permit an audit of its records based solely on its determination that it and Midatlantic Sign are separate entities. Therefore, Midatlantic Sign may have simply concluded that it had no obligation to submit to an audit based on a contract executed between Plaintiffs and Midatlantic Site.

Consequently, the undersigned does not recommend a finding that Midatlantic Sign is an alter ego, or joint or single employer with Midatlantic Site at this time.

### 2. Midatlantic Site

The remainder of this Report will, therefore, evaluate the Plaintiffs' requests for relief solely against Defendant Midatlantic Site for unpaid contributions, interest, liquidated damages, and late fees for the period of October 2013 through July 2014, as well as attorney's fees and costs.

**Count I – Recovery Under ERISA**

In support of their request for relief, Plaintiffs rely on the declaration of Walter Shaw,

Manager of the Billing Department for NPF ("Shaw Decl.").[9] Based on this declaration and accompanying exhibits, the undersigned finds that Midatlantic Site owes Plaintiffs a total of $61.09, as specified in the following table, for failure to pay contributions due from October 2013 through July 2014.

| Plaintiff Fund | Delinquent Contributions | Interest Through 1/31/15 | Liquidated Damages | TOTAL |
|---|---|---|---|---|
| NPF | $0.00 | $0.00 | $0.00 | *$0.00* |
| ITI | $32.00 | $2.33 | $6.40 | *$40.73* |
| Scholarship Fund | $16.00 | $1.16 | $3.20 | *$20.36* |
| SASMI | $0.00 | $0.00 | $0.00 | *$0.00* |
| TOTAL | *$48.00* | *$3.49* | *$9.60* | *$61.09* |

(Dkt. No. 14, Ex. 8.)

### Count II – Recovery Under the Labor Contract

Pursuant to the Labor Contract and 29 U.S.C. § 185, Plaintiffs are entitled to the same type of damages recoverable under ERISA for Midatlantic Site's failure to submit monthly remittance reports and failure to make contributions due from October 2013 through July 2014. Based on the Shaw Declaration and accompanying exhibits, the undersigned finds that Midatlantic Site owes Plaintiffs a total of $367.06, as specified in the following table.

---

[9] The NPF also monitors the remittance and collection of monthly fringe benefit contributions for the SASMI, ITI, and Scholarship Fund. (Shaw Decl. ¶ 1.)

| Plaintiff Fund | Delinquent Contributions | Interest Through 1/31/15 | Liquidated Damages | Late Fees Owed[10] | TOTAL |
|---|---|---|---|---|---|
| NPF | $0.00 | $0.00 | $0.00 | $0.00 | *$0.00* |
| ITI | $32.00 | $2.33 | $6.40 | $0.00 | *$40.73* |
| Scholarship Fund | $16.00 | $1.16 | $3.20 | $0.00 | *$20.36* |
| SASMI | $0.00 | $0.00 | $0.00 | $305.97 | *$305.97* |
| *TOTAL* | *$48.00* | *$3.49* | *$9.60* | *$305.97* | *$367.06* |

(Dkt. No. 14, Ex. 7.)

Although the NPF, ITI, Scholarship Fund, and SASMI may claim relief under both the Labor Contract and ERISA, they do not seek a double recovery to which they are not entitled.

### Count III – Injunctive Relief

Plaintiffs allege that an audit of Midatlantic Site's records was attempted, but that Defendant failed to comply with requests for documents, and that it has since failed to respond or comply with further audit requests. (Compl. ¶ 22; Shaw Decl. ¶ 11.) As such, Plaintiffs initially requested that Defendant, their officers, agents, servants, employees, attorneys and all others in active concert or participation with them permit an audit of all records under the actual or constructive control of the Defendant, and in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due. (Compl. ¶ 43(1).) Plaintiffs also requested that this Court order the Defendant to pay for an audit by a Certified Public Accountant chosen by the Plaintiffs. (Compl. ¶ 43(2).)

Plaintiffs' Amended Motion reiterates a request for injunctive relief by way of an audit

---

[10] Late charges, or pre-litigation liquidated damages, are calculated for the NPF, ITI and, Scholarship Fund at the greater of $50.00 or ten percent (10%) of the contributions due for each month the delinquent contributions are paid late, but prior to commencement of the litigation. (Dkt. No. 14, Ex. 7.) Late fees for SASMI are equal to 10% of the contributions late paid before any lawsuit is filed. (*Id.*) The late fees owed to the Funds are calculated for the period of October 2010 through August 2013. (*Id.*)

13

with a modification in language.[11] Plaintiffs now ask that the Defendant, its officers, agents, servants, employees, attorneys, and all persons acting on its behalf or in conjunction with them to submit to an audit of its wage, payroll, personnel records and project records for all periods for which Defendant is obligated to contribute to the Funds, so that a precise determination of any amounts owed and benefits due employees can be made. (Mem. Supp. Default J. at 17-19; Proposed Order ¶ 6(a).) Plaintiffs also request that the Defendant be enjoined to submit complete and accurate remittance reports, containing information such as: (1) all employees for whom contributions are due; (2) the hours worked by employees; (3) the hours for which employees were paid; (4) the gross earnings of employees; and (5) the contributions due to the Plaintiffs. (Am. Mot. Default J. ¶ 12.)

The undersigned is persuaded that such an injunction is reasonable and necessary, in light of the alleged facts in this case. Therefore, an injunction compelling an audit of Defendant Midatlantic Site's above stated records and submission of complete and accurate remittance reports is recommended. Furthermore, Plaintiffs shall choose a Certified Public Accountant for said audit, and Midatlantic Site is obligated to pay the reasonable costs thereof.

### Attorney's Fees and Costs

Plaintiffs request attorney's fees and costs incurred in this action, pursuant to Section 502(g)(2) of ERISA, and rely on the declaration of James E. Goodley ("Goodley Decl."), asserting $9,078.00 in attorney's fees and $628.00 in costs. (Compl. ¶¶ 16(d), 19(d), 20(d), 21(c), 32(2); Dkt. No. 14, Ex. 7 at 4-5.) The Labor Contract between Midatlantic Site and the Plaintiffs explicitly contemplates recovery of attorney's fees in the event of the Defendant's default under the contract. (Dkt. No. 14, Ex. 10 at 12.) Additionally, Plaintiffs' counsel only seek the actual

---

[11] Plaintiffs' Motion for Default Judgment references injunction language in Plaintiffs' Proposed Order and Memorandum in Support of the Motion for Default Judgment. (Am. Mot. Default J. at 4; Proposed Order ¶ 6(a)-(b); Mem. Supp. Default J. at 17-19.)

fees billed to the client instead of total hours worked, which reflects a special fee schedule negotiated with the Plaintiffs. (Goodley Decl. ¶ 4.)

A court may exercise discretion to award reasonable attorney's fees and costs of the action to either party. 29 U.S.C. § 1132(g)(1). In addition to performing a lodestar analysis, when determining the reasonableness of attorney's fees, a court's discretion should be guided by twelve *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))). The party seeking to recover fees bears the burden of proving the reasonableness of the amount of fees requested. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

Based on the documentation before the Court, the undersigned is not persuaded that the requested fees are reasonable compensation for the time expended to vindicate Plaintiff's rights. Although the undersigned will accept the rates charged by the various counsel as reasonable, the Court is compelled to note some concern over the amount of the fee requested in relation to the results obtained, as well as a discrepancy in the billed time as documented by the Goodley Declaration.

First, it appears that time was billed by an attorney who is not identified in the Goodley Declaration—one "JAS." This individual completed five tasks, and billed at the rate of $195.00 per hour, for a total of $799.50 on the bill. (Dkt. No. 14, Ex. 7.) The use of these initials does not appear to be the result of human error, and the time is not attributable to another, previously identified attorney. Because this omission has not been explained, the undersigned does not recommend that the time billed by JAS be included in the total attorney fee award.

Additionally, the undersigned notes that the amount of the recovery in this action, including interest, liquidated damages, and late fees, amounts to no more than $367.06. This figure is out of proportion to the amount of attorney's fees requested. A review of the docket indicates that the path to default judgment was not particularly complex in this case as, to the Court's knowledge, there was no discovery either sought or taken by the Plaintiffs, and Defendants offered no opposition besides a stricken *pro se* Answer. Of course, this action did involve the exploration of an alter ego theory of liability; however, as stated above, this claim was ultimately insufficiently supported and pled. Thus, this case simply did not require the same level of expertise or time as it would have had the matter been vigorously defended by both Defendants or gone to trial.

Therefore, having thoroughly reviewed the contours of this case, and giving due consideration to all pertinent factors, the undersigned recommends a 30% reduction in the overall attorney fee award (less the time billed by JAS) to account for these issues. Plaintiffs are, thus, entitled to $5,794.95 in attorney's fees and $628.00 in costs.

## IV. RECOMMENDATION

The undersigned Magistrate Judge finds that the submitted pleadings and affidavits establish that Plaintiffs are entitled to a default judgment, and therefore recommends entry of

default judgment in favor of Plaintiffs and against Defendant Midatlantic Site Services, LLC. The undersigned does not recommend the entry of default judgment against Defendant Midatlantic Sign Services, LLC. The undersigned finds Plaintiffs are entitled to damages in the total amount of $6,790.01 from Midatlantic Site Services, LLC, in accordance with the following table, as well as injunctive relief as recommended herein.

| *Plaintiff Fund* | *Delinquent Contributions* | *Interest Through 1/31/15* | *Liquidated Damages* | *Late Fees Owed* | *Attorney's Fees and Costs* | *TOTAL* |
|---|---|---|---|---|---|---|
| NPF | $0.00 | $0.00 | $0.00 | $0.00 | $6,422.95 | $6,422.95 |
| ITI | $32.00 | $2.33 | $6.40 | $0.00 | $0.00 | $40.73 |
| Scholarship Fund | $16.00 | $1.16 | $3.20 | $0.00 | $0.00 | $20.36 |
| SASMI | $0.00 | $0.00 | $0.00 | $305.97 | $0.00 | $305.97 |
| *TOTAL* | *$48.00* | *$3.49* | *$9.60* | *$305.97* | *$6,422.95* | *$6,790.01* |

## V. <u>NOTICE</u>

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendants at the following addresses:

Terry Metz, Office Manager
Midatlantic Site Services, LLC
Midatlantic Sign Services, LLC
313 Pennington Avenue
Waterford Works, NJ 08089

Law Offices of Schroll and Bowman, Registered Agent
Midatlantic Site Services, LLC
Midatlantic Sign Services, LLC
2 Sheppard Road, Suite 603
Voorhees, NJ 08043

                                                    /s/
                                        Ivan D. Davis
                                        United States Magistrate Judge

July 17, 2015
Alexandria, Virginia